**FILED**
**Jun 05, 2025**
**08:05 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION CLAIMS
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | |
|---|---|
| JOSE VEGA,<br>　　　　Employee,<br>v.<br><br>C. A. SMITH CONSTRUCTION,<br>INC.,<br>　　　　Employer. | )　Docket No. 2023-05-7310<br>)<br>)<br>)<br>)　State File No. 860455-2023<br>)<br>)<br>)<br>)　Judge Dale Tipps |

---

## EXPEDITED HEARING ORDER GRANTING BENEFITS

---

The Court held an Expedited Hearing on May 29, 2025, on whether Mr. Vega is entitled to medical and temporary disability benefits. Mr. Vega asserted he was Smith Construction's employee; Smith Construction primarily contended he was an independent contractor, as well as asserting other defenses. For the reasons below, the Court holds that Mr. Vega is likely to prove at a hearing that he was an employee and is entitled to the requested benefits.

### History of Claim

Mr. Vega worked for Smith Construction for several months before he suffered an injury on July 13, 2023. He was installing siding when the ladder began to slide. Mr. Vega jumped from the falling ladder and seriously injured his left ankle.

Smith Construction presented evidence to show that Mr. Vega was intoxicated. Joe Sullivan, who described himself as a subcontractor for Smith, testified that the accident occurred shortly after a break, when he saw Mr. Vega drinking "what looked like a beer" in his truck. He also said Mr. Vega smelled of alcohol when he helped him back to his truck after the accident, and he saw a 40 oz. Bud Light bottle in the truck. Another Smith Construction worker, Curtis Newton, also said he saw Mr. Vega in his car during the break and smelled alcohol. He later saw Mr. Vega stumbling as he walked back to the job.

Mr. Vega denied drinking the morning of the accident. His coworker, Arturo Contreras, also helped him to his truck and said he smelled no alcohol. Mr. Vega's wife

agreed he did not smell of alcohol when he came home from the jobsite.

Smith Construction also suggested that Mr. Vega was working in an unsafe manner by standing on the next-highest rung of the ladder. Mr. Sullivan added that he should not have jumped from the ladder but should have "ridden it down" to avoid injury.

The primary dispute during the hearing was Mr. Vega's employment status. He testified that Joe Sullivan controlled the work, telling him where to go, what to do, and when to do it. There was no written contract, but Mr. Vega was hired to work for $19.00 per hour and was paid weekly. He was not free to hire helpers. Mr. Sullivan provided the ladders and tools, and he scheduled the work hours.

Mr. Vega admitted signing a W-9 form but said Mr. Sullivan filled it out, including falsifying a social security number.

Mr. Contreras described a similar status, saying that he was paid hourly and that someone else provided the tools. He said Mr. Sullivan worked as a supervisor for Smith Construction and that Mr. Sullivan and the owner, Cody Smith, scheduled his hours. Mr. Contreras testified that Mr. Sullivan eventually fired him after a disagreement.

Cody Smith disagreed and insisted Mr. Vega was an independent contractor. He said he offered Mr. Vega the option of being an employee, but Mr. Vega chose to be a contractor. He did not remember how Mr. Vega was paid. Similarly, he did not know who gave Mr. Vega the W-9 form, as his wife handles the paperwork for his business, but said it would not have been Mr. Sullivan, who was just another of his subcontractors. He admitted he had no workers' compensation insurance.

Mr. Smith did not know who furnished the ladder but said it did not belong to his company. He also denied furnishing tools. Mr. Smith did not set the working hours but explained that the development where the houses were being built limited the hours when tradespeople were allowed to work. He said that both he and Mr. Vega had the right to terminate the relationship.

Mr. Sullivan testified that he and Mr. Vega were both subcontractors. All the materials were furnished by Smith Construction. Mr. Vega was supposed to bring his own tools, but they often used tools found on site. However, these did not belong to Smith Construction. He also said that everyone on the site tried to take their breaks at the same time to keep from disrupting each other's work. Mr. Sullivan denied being involved in hiring decisions or filling out the W-9. Instead, Mr. Vega asked him what to do with the form, and Mr. Sullivan just told him how to fill it out.

Regarding Mr. Vega's injuries, Dr. Jeffrey Loveland testified by deposition that he suffered a left calcaneal fracture and underwent a surgical reconstruction. As a result, Mr.

Vega was unable to work until May 6, 2024. Presented with copies of his medical bills and those of St. Thomas Highland, Dr. Loveland said the charges were reasonable and necessary.

At the hearing, the parties agreed that Mr. Vega missed 298 days of work because of the accident. They also agreed to a $450.81 compensation rate and medical expenses of $55,445.45.

Mr. Vega requested payment of his medical bills and temporary disability benefits. Smith Construction contended that Mr. Vega is not entitled to benefits because he was an independent contractor. In the alternative, it argued that his claim is barred for intoxication and violation of safety rules.

**Findings of Fact and Conclusions of Law**

Mr. Vega must prove he is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2024); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

Because the parties agree that Mr. Vega was injured at the jobsite, the threshold issue is whether he was Smith Construction's employee or an independent contractor at the time. Tennessee Code Annotated section 50-6-102(12)(D)(i) directs courts to consider the following factors when determining whether an individual is an employee or an independent contractor:

(a) The right to control the conduct of the work;
(b) The right of termination;
(c) The method of payment;
(d) The freedom to select and hire helpers;
(e) The furnishing of tools and equipment;
(f) Self-scheduling of working hours; and
(g) The freedom to offer services to other entities[.]

The right to control the conduct of the work is the most significant factor when determining whether a worker is an employee or independent contractor. Further, once it is established that an employment relationship exists, "the burden is on the employer to prove the worker was an independent contractor rather than an employee." *Thompson v. Concrete Solutions*, 2015 TN Wrk. Comp. App. Bd. LEXIS 3, at *14, 15 (Feb. 10, 2015).

Regarding factors (a) and (e), both Mr. Vega and Mr. Contreras said that Mr. Sullivan functioned as a sort of supervisor for Smith, telling them where, when, and how to do the job. Mr. Sullivan and Mr. Smith contended that the hours were effectively dictated by the housing development's rules on when workers could get through the gates.

3

The Court is unpersuaded by this argument. Although access to the jobsite was limited by the gate hours, Smith Construction presented no proof that, within those limitations, Mr. Vega was free to work whenever he wanted. Further, the evidence suggested that Smith Construction's workers all took their breaks at the same time. While Mr. Sullivan explained that this was a matter of courtesy, it seems more likely that the break times were mandated by a representative of Smith Construction. Finally, Mr. Sullivan said he told Mr. Vega on several occasions that it was unsafe to use the uppermost rungs of the ladder. This suggests a level of supervision or control greater than that of one subcontractor to another. The same is true of Mr. Contreras's uncontroverted testimony that Mr. Sullivan fired him from the job. These inconsistencies preclude a finding that Mr. Vega controlled the conduct of the work or scheduled his own work hours.

As for the right of termination, Mr. Smith admitted he could have terminated Mr. Vega at any time. This suggests an employee/employer relationship.

Regarding the method of payment, this factor generally supports a finding of an employment relationship because Smith Construction paid Mr. Vega an hourly wage, rather than a contract price.

As to the freedom to select and hire helpers, Smith Construction offered no proof to rebut Mr. Contreras's and Mr. Vega's testimony that they could not hire helpers. This favors a finding that Mr. Vega was an employee.

As to the furnishing of tools, the testimony conflicted, but only to a point. While Mr. Smith and Mr. Sullivan said that Smith did not provide tools, everyone agreed that Mr. Vega did not furnish the ladder involved in the accident. Further, Mr. Sullivan testified that workers often used tools that were found on the jobsite. The proof on this issue is insufficient to find that Mr. Vega furnished or was expected to furnish his own tools and equipment.

Finally, regarding the freedom to offer services to others, the parties offered little or no evidence on whether they had any understanding as to exclusivity. At best, this factor favors neither party.

Smith Construction has asserted an affirmative defense, which imposes the burden of proving by a preponderance of the evidence that Mr. Vega was an independent contractor. *Pope v. Nebco of Cleveland, Inc.,* 585 S.W.3d 874, 888 (Tenn. Workers' Comp. Panel Jan. 16, 2018). It has not met that burden, as most of the factors support the existence of an employer/employee relationship. Therefore, the Court holds that Mr. Vega would likely prevail at a hearing on the merits on his claim that he was an employee.

Smith Construction's other defenses are similarly unsuccessful. It suggested Mr.

4

Vega's injuries were caused by his position near the top rung of the ladder or by his decision to jump when it fell but offered no proof supporting this assertion. Further, the affirmative defense of willful misconduct requires Smith Construction to prove: (1) the employee's actual, as opposed to constructive, notice of the rule; (2) the employee's understanding of the danger involved in violating the rule; (3) the employer's bona fide enforcement of the rule; and, (4) the employee's lack of a valid excuse for violating the rule. *Mitchell v. Fayetteville Pub. Utilities,* 368 S.W.3d 442, 453 (Tenn. 2012). Smith did not present proof on any of these factors.

Similarly, Smith Construction contended that Mr. Vega drank beer on his break and smelled of alcohol but failed to present any proof that he was intoxicated or impaired, or that his accident was the result of any impairment. *See Woodard v. Freeman Expositions, LLC,* 2020 TN Wrk. Comp. App. Bd. LEXIS 15, at *4-5 (Apr. 3, 2020) (an employer must present evidence that an employee's substance use was the proximate cause of his injuries).

For these reasons, the Court holds Mr. Vega is likely to prove he was an employee and is entitled to medical benefits, including continuing treatment with Dr. Loveland and payment of medical expenses already incurred. He is also entitled to temporary total disability benefits based on the agreed-upon disability period and compensation rate.

Finally, the Court considers whether Mr. Vega is eligible to apply for benefits from the Bureau's Uninsured Employers Fund. Under section 50-6-801(d), the Bureau has *discretion* to pay limited benefits to Mr. Vega if he proves the following:

1) He worked for an employer who failed to carry workers' compensation insurance;
2) He suffered an injury primarily within the course and scope of employment on or after July 1, 2015;
3) He was a Tennessee resident on the date of injury;
4) He provided notice to the Bureau of the injury and of the failure of the employer to secure the payment of compensation within a reasonable period of time, but in no event more than 180 days after the date of the injury.
5) He secured a judgment against the employer for the injury.

Based on the information in the Petition for Benefit Determination and the proof presented, the Court finds Mr. Vega worked for an uninsured employer, C.A. Smith Construction, Inc. He has secured an order that he would likely prevail at a hearing on the merits that he suffered injuries arising in the course and scope of his employment on July 13, 2023. He was a Tennessee resident on that date and provided notice to the Bureau of his injury and Smith's lack of insurance within 180 days.[1] Therefore, Mr. Vega satisfied

---

[1] Mr. Vega filed his Petition for Benefit Determination on October 13, 2023, and a Request for Investigation was filed on October 19. The Expedited Request for Investigation Report by Nicolette Sanders was completed on October 23 and concluded that the employer had no coverage.

all the requirements of section 50-6-802(d)(1). He may complete the enclosed form **for consideration of a discretionary payment** through the Uninsured Employers Fund.

**IT IS, THEREFORE, ORDERED** as follows:

1. C.A. Smith Construction, Inc. shall furnish all treatment made reasonably necessary by Mr. Vega's July 13, 2023 injury under Tennessee Code Annotated section 50-6-204. Dr. Jeffrey Loveland is the authorized treating physician. C.A. Smith Construction, Inc. shall also pay Mr. Vega's medical bills from Dr. Loveland and St. Thomas Highland, subject to the fee schedule.

2. C.A. Smith Construction, Inc. shall pay Mr. Vega temporary total disability benefits of $19,191.20 for the period of July 13, 2023, through May 6, 2024.

3. Mr. Vega satisfied the requirements of Tennessee Code Annotated section 50-6-801(d) and thus is eligible to request limited medical and temporary disability benefits from the Uninsured Employers Fund at the Administrator's discretion. To do so, he must complete and file the attached form.

4. This case is set for a Status Hearing on **August 14, 2025, at 9:00 a.m**. Please call 855-874-0473 to participate. Failure to call might result in a determination of the issues without your further participation. All conferences are set using Central Time.

5. Unless an interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit confirmation within seven business days may result in a penalty assessment for non-compliance. For questions regarding compliance, contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED June 5, 2025.**

_____

**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

6

**APPENDIX**

Exhibits:
1. Deposition of Dr. Jeffrey Loveland
2. Affidavit of Sandy Vega
3. Affidavit of Arturo Contreras
4. Affidavit of Jose Vega
5. Expedited Request for Investigation Report
6. Parties' stipulations
7. IRS W-9 form signed by Jose Vega
8. Records from Tennessee Orthopedic Alliance
9. Ms. Yepes's Rule 72 Declaration
10. Photographs of workstation (identification only)
11. Plant Work Rules

## CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent as indicated on June 5, 2025.

| Name | Certified Mail | Email | Service sent to: |
| --- | --- | --- | --- |
| D. Russell Thomas, Employee Attorney | | X | russthomas@thethomaslawfirm.com |
| William J. Butler, Employer Attorney | | X | joey@farrar-hollimanlaw.com |
| LaShawn Pender | | X | Lashawn.pender@tn.gov |

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

7



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
    ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
    ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.

    When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

    **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____   ☐ Motion Order filed on _____

☐ Compensation Order filed on_____   ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

### Parties
**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*